**UNITED STATES COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No.: 19-cv-81150

TERESA TERUEL,

    Plaintiff,

vs.

CATAYU WEST, INC.
d/b/a LA TAPATIA SUPERMARKET II
a Florida Profit Corporation,
and  CALED HAMED,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TERESA TERUEL ("Ms. Teruel"), by and through the undersigned attorneys, sues Defendants, CATAYU WEST, INC. d/b/a LA TAPATIA SUPERMARKET II ("TAPATIA"), and CALED HAMED ("Mr. Hamed") (Collectively, "Defendants"), and alleges:

### PARTIES

1. Plaintiff, Ms. Teruel, resides within the geographical jurisdiction of the Southern District of Florida, is over the age of 18 and is otherwise *sui juris.*

2. Defendant, TAPATIA, is a Florida profit corporation, with its principal place of address at 3819 Westgate Ave, Suite 8, West Palm Beach, FL 33409.  TAPATIA existed for the purpose of operating a supermarket.

3. Defendant, Mr. Hamed, resides within the geographical jurisdiction of the Southern District of Florida, is over the age of 18 and is otherwise *sui juris.*

4. Mr. Hamed approved and ratified all unlawful payroll policies, practices, and procedures transgressing the requirements of the FLSA mentioned herein.

5. At all times material hereto, Plaintiff, Ms. Teruel, was employed by TAPATIA.

## JURISDICTION AND VENUE

6. This is an action to recover unpaid wages and overtime compensation, liquidated damages, attorneys' fees and costs pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §201 *et seq.* against Defendants.

7. TAPATIA engaged and engages in interstate commerce and employees Plaintiff within the jurisdiction of this Court.

8. At all times material hereto, Mr. Hamed was the President of TAPATIA and was responsible for its daily operations, including all payroll practices and decisions.

9. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 29 U.S.C. §216(b).

## GENERAL ALLEGATIONS

10. Upon information and belief, TAPATIA's gross annual revenues were in excess of $500,000.00 per year in the years 2016, 2017, and 2018, and will exceed the same in 2019.

11. At all relevant times, TAPATIA has been and continues to be an "employer" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

12. Upon information and belief, TAPATIA (1) had employees engaged in interstate commerce or in the production of goods for interstate commerce, and (2) had employees who handled, sold, or otherwise worked on goods or materials that have been moved in, or produced for, interstate commerce in the years 2016 - 2019.

13. TAPATIA constantly engages in interstate commerce through the purchase of products through interstate commerce, and selling those products at the Supermarket.

14. TAPATIA employed Plaintiff, Ms. Teruel, who, herself, handled equipment and supplies in interstate "commerce" for the purpose of conducting TAPATIA's business. These included, but were not limited to, assisting customers in the supermarket, at the counter at the food service area of the supermarket, and also worked arranging food products for display and operated the cash register. Therefore, based on the aforementioned, TAPATIA were at all times hereafter mentioned, engaged in commerce or in the production of goods for commerce as defined in 29 U.S.C. §§203(r) and 203(s).

15. At all times material hereto, Plaintiff, in performing her job duties, was engaged in commerce within the meaning of 29 U.S.C. §§203(b), 203(r), 203(s), 206(a) and 207(a).

16. From August 13, 2016 to approximately July 7, 2019, Plaintiff was employed by Defendants performing general labor at TAPATIA supermarket. [1]

17. At all times pertinent to the Complaint, Defendants failed to comply with §§ 29 U.S.C. 201- 219 as Plaintiffs performed hours of service for Defendants in excess of forty (40) hours during each week when she was employed, and during the relevant time period. Yet, Defendants elected to avoid paying Plaintiff overtime for hours worked beyond 40 hours per week.

18. Consistently, Plaintiff worked over forty hours each week. Yet, Defendants decided to engage in a scheme where Defendants would pay Plaintiff for forty (40) hours using a check, and some cash for hours beyond the forty hours worked on each week for the extended and unusual work shifts.

---

[1] Plaintiff's employment with TAPATIA commenced approximately on November 11, 2015

3

19. Defendants engaged in this scheme to avoid the liability of paying overtime, full hourly wages for all hours worked beyond forty hours per week, and avoid payroll taxes.

20. Rather than properly pay Plaintiff overtimes wages, as is mandated by law, TAPATIA would pay Plaintiff some cash for hours beyond the forty hours per week, rather than time and one-half.

21. Plaintiff is not exempt from the right to receive the appropriate overtime pay under the FLSA. Plaintiff solely performed non-exempt work, that is, Plaintiff's primary duties consisted of running the cash register, organizing food items at the bakery in the supermarket, and other non-supervisory roles.

22. Plaintiff was not free from supervision in connection with matters of significance such as project management or operations. Moreover, Plaintiff did not supervise full-time employees or their equivalent.

23. Upon information and belief, Defendants further failed to maintain proper time records as mandated by the FLSA regarding the hours worked by Plaintiffs.

24. The pay practice on the part of Defendants violated the FLSA as Defendants failed to properly pay overtime to Plaintiffs for those hours worked in excess of forty (40).

25. Since August 13, 2016, Defendants (1) employed Plaintiff; and (2) suffered or permitted to be suffered, with knowledge, hours of service by Plaintiff in excess of forty (40) during one or more workweeks, for which Defendants failed to properly pay additional overtime premiums.

26. Upon information and belief, Defendants' failure to properly pay overtime for those hours worked in excess of forty (40) is not unique to Plaintiff. Rather, Defendants utilized the

exact same aforementioned scheme, in violation of the FLSA, for all employees at various locations with similar job titles and qualifications.

27. All of these aforementioned TAPATIA employees were and have been subject to a payroll policy, practice, and procedure transgressing the requirements of the FLSA.

28. As a result, there exist many other "similarly situated" employees, within the meaning of 29 U.S.C. § 216(b). This putative class includes every employee of TAPATIA that was not employed in a managerial or supervisory capacity (*e.g.,* all general supermarket labor) and employed for any length of time since three (3) years prior to the filing of the instant lawsuit. Like Plaintiffs, all members of this putative class were paid their respective standard rates of pay for hours worked over forty (40) each week, rather than time and one-half, as is required under Federal law.

**COUNT I**
**RECOVERY OF UNPAID OVERTIME- VIOLATION OF THE FLSA, 29 U.S.C. § 207 ON BEHALF OF PLAINTIFF, TERESA TERUEL, AGAINST DEFENDANTS, TAPATIA III AND MR. HAMED**

29. Plaintiff, TERESA TERUEL, re-alleges and reaffirms paragraphs 1 through 28 as if fully set forth herein.

30. This is an action for Unpaid Overtime on behalf of Plaintiff, TERESA TERUEL, against Defendants, CATAYU WEST, INC., d/b/a LA TAPATIA SUPERMARKET, II and CALED HAMED.

31. During Ms. Teruel's employment with TAPATIA, Ms. Teruel worked overtime hours in excess of forty (40) per week, for which she was not properly compensated.

32. During the period of August 13, 2016 through March 3, 2017, Plaintiff worked 66 hours per week, for a total of 26 hours of overtime per week.  Plaintiff worked, during that period of time, a total of 754 overtime hours, and yet, was not compensated as required by law.

5

33. Defendants continued engaging in willful FLSA violations from 2017 through 2018. During the period of March 4, 2017 through October of 2018, Plaintiff worked 60 hours per week, for a total of 20 hours of overtime per week. Plaintiff worked, during that period of time, a total of 1,640 overtime hours, and yet, was not compensated as required by law.

34. Between October of 2018 through July 7, 2019, Plaintiff worked 54 hours per week, for a total of 14 hours of overtime per week. Plaintiff worked, during that period of time, a total of 560 overtime hours, and yet, was not compensated as required by law.

35. Ms. Teruel was entitled to be paid at the rate of time and one-half for hours worked in excess of forty (40) hours per week pursuant to the FLSA. Ms. Teruel was never paid overtime for the hours that she worked for TAPATIA and Mr. Hamed.

36. In total, upon information and belief, Plaintiff, Ms. Teruel, worked a total **of 2,954 overtime hours** for TAPATIA and Mr. Hamed, and yet, was not compensated as required by law.

37. Upon information and belief, Mr. Hamed had control of decisions concerning payroll, and how TAPATIA was to avoid paying overtime to Plaintiff and others. Ms. Teruel earned, and was supposed to receive $15.00 per hour for the 754 hours she worked beyond 40 hours per week for a total of $11,310.00. Ms. Teruel was thereafter supposed to receive $16.50 per hour for the 2,200 hours she worked beyond 40 hours per week for a total of $36,300.00. Ms. Teruel was required to be paid a total of **$47,610.00** for the overtime hours she worked. Ms. Teruel was entitled to be paid the regular rate and overtime rate for the relevant time-periods referenced above. Yet, Defendants shirked their responsibility to pay as required by law.

38. TAPATIA and Mr. Hamed knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by TAPATIA and Mr. Hamed's failure to pay Ms. Teruel time and one-half wages for the hours she worked in excess of forty (40) hours per week. The

willful intent is evident based on the decision by TAPATIA and Mr. Hamed to only pay for forty hours per week with a check, and to pay some cash for the hours beyond forty hours per week. This conduct occurred on a weekly basis.  TAPATIA and Mr. Hamed intentionally skirted federal law failing to pay Ms. Teruel as required by law.

39.     TAPATIA and Mr. Hamed failed to properly disclose or apprise Ms. Teruel of her rights under the FLSA.

40.     TAPATIA  and Mr. Hamed failed to maintain proper time records as mandated by the FLSA regarding the hours worked by Ms. Teruel.

41.     Ms. Teruel is entitled to liquidated damages pursuant to the FLSA.

42.     Due to the intentional, willful, and unlawful acts of TAPATIA and Mr. Hamed, Ms. Teruel has suffered damages in the amount not presently ascertainable of unpaid overtime wages, plus an equal amount as liquidated damages, together with interest.

43.     Ms. Teruel is entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

44.     Ms. Teruel demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff, TERESA TERUEL, respectfully requests that a judgment be entered against Defendants, CATAYU WEST, INC., d/b/a LA TAPATIA SUPERMARKET, II and CALED HAMED:

    a. Declaring that Defendants have violated the overtime provisions of 29 U.S.C. § 207;

    b. Awarding Ms. Teruel overtime compensation in the amount to be calculated;

    c. Awarding Ms. Teruel liquidated damages in the amount to be calculated;

d. Awarding Ms. Teruel reasonable attorneys' fees and costs and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

e. Awarding Ms. Teruel pre- and post-judgment interest; and

f. Ordering any other and further relief this Honorable Court deems to be just and proper, including but not limited to relief in favor of all others similarly situated who join this action after notice.

Respectfully Submitted on this 13th day of August, 2019.

> Pike & Lustig, LLP
> */s/ Daniel Lustig*
> Michael J. Pike
> Florida Bar No.: 617296
> Daniel Lustig
> Florida Bar No.: 059225
> 1209 N. Olive Ave.
> West Palm Beach, FL 33401
> Telephone: (561) 855-7585
> Facsimile: (561) 855-7710
> Email: pleadings@pikelustig.com
> *Counsel for Plaintiffs*